Filed 9/13/21 P. v. Bustillos CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT JOHN BUSTILLOS,<br><br>    Defendant and Appellant. | D077994<br><br><br><br>(Super. Ct. Nos. SCD280040 and SCD284653) |

APPEAL from a judgment of the Superior Court of San Diego County, Margie G. Woods, Judge. Affirmed.

Linnéa M. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Robert Bustillos was charged with robbery (Pen. Code, § 211),[1] attempted carjacking (§§ 664, 215, subd. (a)), and battery by gassing (§ 243.9, subds. (a), (b) [" 'gassing' means intentionally placing or throwing . . . human excrement or other bodily fluids" on "the person of another"]).  Before trial, he filed a comprehensive noticed motion seeking mental health diversion under section 1001.36.  Bustillos supported his motion with a 30-page report from a psychologist, and a proposed transition plan from a social worker.  After two hearings, the trial court denied the motion with a lengthy oral explanation.  Among its reasons for denying the motion, the trial court was not satisfied that Bustillos—who had a long history of mental illness, substance abuse, and violent criminal activity— would respond to mental health treatment or could be treated in the community without posing an unreasonable risk of danger to public safety.  Bustillos then pleaded guilty, and the trial court sentenced him to seven years in prison.

On appeal, Bustillos contends the trial court abused its discretion in denying his motion by applying the wrong legal standard.  Specifically, he contends that because the court and parties referred to the diversion hearing as a "prima facie" hearing, the court was required to accept his assertions as true; thus, the court erred by weighing evidence and making credibility determinations.  On the appellate record before us, we are not persuaded.  Regardless of the label the trial court and counsel applied to the diversion hearing, Bustillos received exactly the type of hearing he expected and to which he was entitled—a meaningful hearing at which the court thoroughly evaluated Bustillos's comprehensive evidentiary showing.

---

[1]     Further undesignated statutory references are to the Penal Code.

2

Accordingly, we affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 7, 2019, Bustillos approached a convenience store customer who was returning to his electric vehicle. Bustillos approached the customer, stated he had a gun, and demanded the customer's car keys and cellphone. The customer complied. When Bustillos had trouble starting the car, he fled on foot and discarded the stolen keys and cellphone. Police apprehended him nearby a short time later.

Bustillos was charged in case Number SCD280040 with one count each of robbery (§ 211) and attempted carjacking (§§ 664, 215, subd. (a)), with the further allegations that he had suffered two serious felony priors and two strike priors.

On November 19, 2019, Bustillos moved the trial court for an order granting him mental health diversion under section 1001.36.

Three days later (on November 22), while in local custody, Bustillos threw urine on a guard. He was charged in case Number SCD0284653 with battery by gassing (§ 243.9, subd. (a)), with the further allegation that he had suffered two strike priors.

The trial court denied Bustillos's motion in January 2020.

In February 2020, under the terms of a global plea bargain, Bustillos pleaded guilty to all charges and admitted the serious felony and strike prior allegations, in exchange for a 13-year lid.

In August 2020, the trial court sentenced Bustillos to seven years in prison.

3

## II. DISCUSSION

Bustillos contends the trial court abused its discretion in denying his mental health diversion motion by applying the wrong legal standard. On the record before us, we disagree.

### A. Background

#### 1. Bustillos's Diversion Motion

In November 2019, Bustillos filed a motion requesting that the trial court grant him pretrial mental health diversion under section 1001.36. Bustillos supported his motion with an 11-page memorandum of points and authorities; a 30-page (single-spaced) report from a clinical and forensic psychologist (Dr. Malek), which was filed under seal; and a two-page letter from a defense social worker detailing the proposed transition to diversion treatment.

In her report, Dr. Malek chronicled Bustillos's dysfunctional and abusive childhood, and his lengthy histories of mental health issues, substance abuse, and criminal activity.

Bustillos did well in high school, until the onset of symptoms of schizophrenia caused his grades to slip. After graduating in 1997, he attended one year of community college before joining the Air Force. After less than one year, he was discharged over mental health concerns.

In May 2000, Bustillos was convicted of misdemeanor battery. In June 2000, he was convicted of disturbing the peace. In July 2000, he was convicted of assault with a deadly weapon and battery. In November 2000, he was again convicted of assault with a deadly weapon, as well as being under the influence of a controlled substance. In September 2001, he was convicted of misdemeanor and felony battery causing serious bodily injury. It

4

appears that Bustillos committed several of these assaults while living in a residential treatment setting.[2]

In September 2002, Bustillos was convicted of reckless driving and "wet" reckless driving.

In April 2003, while driving on a suspended or revoked license and under the influence of alcohol, Bustillos caused a traffic collision in which one man died and three others were injured. Bustillos was convicted of gross vehicular manslaughter while intoxicated, and sentenced to 10 years 8 months in prison. While incarcerated, Bustillos was diagnosed with schizophrenia undifferentiated type, and alcohol and cannabis dependence in a controlled environment. He was under an order for involuntary medication for five years.

Bustillos was paroled in March 2012 and psychiatrically hospitalized as a mentally disordered offender until July 2012. Three days after his release in July 2012, Bustillos committed a robbery. He was convicted and received antipsychotic medication while incarcerated.

In April 2013, while incarcerated, Bustillos straddled another inmate and repeatedly punched him in the face. In June 2013, Bustillos struck another inmate in the head, neck, and chest area several times.

Bustillos was paroled in 2014 and psychiatrically hospitalized. He was again diagnosed with schizophrenia undifferentiated type, and alcohol and cannabis dependence in a controlled environment.

---

[2] Dr. Malek's report indicates that while Bustillos was residing at a center called Grant House, he hit a female resident in the face, and "knocked another female down the stairs and threw a chair at her." The report also indicates that in Spring 2000, Bustillos "was in jail for assaulting security guards at SJGH."

Following his release, Bustillos moved to Texas, where he committed a series of misdemeanors. He sought housing and psychiatric assistance from the Veterans Administration, but was not eligible due to his limited service term.

In July 2018, Bustillos returned to California and spent about 18 months alternating between being homeless and spending time in sober living facilities in Stockton.

In January 2019, Bustillos traveled to San Diego to investigate veteran housing options. While on a waitlist, Bustillos was homeless, relapsed on methamphetamine and marijuana, and committed the current robbery and attempted carjacking offenses. While in local custody on these charges, he had "several incidents of smearing feces/covering his cell in urine and gassing deputies."

Dr. Malek ultimately opined (1) Bustillos suffers from a qualifying mental health disorder under section 1001.36 (schizophrenia, independent of his substance-use disorders); (2) "his mental disorder was a significant factor in the commission of the charged offense[s]"; (3) he was "currently stabilized on medication," "appeared to have insight into his mental illness," and his symptoms would respond to mental health treatment; and (4) his treatment needs could be met by "an evidence[ ]-based approach such as Assertive Community Treatment (ACT)."

Bustillos acknowledged in his diversion motion that "[i]t is without question that [he] has a significant criminal history and . . . faces a life sentence as he has two strike priors." But he maintained he would not pose a danger to public safety if treated in the community because he was now receiving "enormously effective" monthly injections of antipsychotic medications that were not previously available to him.

6

Bustillos also stated in his motion that he consents to mental health diversion and waives his speedy trial rights.

Bustillos made no mention of prima facie principles in his motion.

## 2. Prosecution Opposition

The prosecution opposed Bustillos's motion, arguing (1) he failed to prove he suffers from a qualifying mental disorder because his significant mental health issues were exacerbated by his substance abuse problems; (2) his mental disorder was not a significant factor in the commission of the current robbery and attempted carjacking offenses because his intent was simply to steal property; (3) he had not shown his symptoms would respond to treatment because he "continues to engage in criminal offenses" despite having "been afforded a wide variety of mental health and substance abuse treatment"; (4) his extensive history of criminal conduct showed he would pose an unreasonable risk of danger to public safety if treated in the community; and (5) he failed to provide a specific treatment plan.

The prosecution also argued that because mental health diversion is discretionary, if the court were to find that Bustillos "has made a prima facie case for eligibility, the People are entitled to a further hearing to present evidence showing that this case is not appropriate for diversion and that granting [Bustillos]'s motion would be against the public interest."

The prosecution later supplemented its opposition with records documenting Bustillos's extensive history of criminal conduct and quickly reoffending upon being released from custody.

## 3. Bustillos's Supplement

As noted, just days after Bustillos filed his diversion motion, he committed the charged gassing offense. The trial court began hearing the

7

motion in December 2019, but continued it to January 23, 2020. The reporter's transcript of the December hearing is not in the appellate record.

A few days before the continued hearing date, Dr. Malek submitted a letter "to address some of the Court's concerns regarding Mr. Bustillos'[s] recent behavior in jail (gassing a jail deputy on 11/22/19) and his past treatment failures." Dr. Malek wrote that Bustillos attributed his conduct to "his medications . . . having an adverse effect on him and that he was experiencing increased auditory hallucinations . . . telling him to 'defend [him]self.' " "He also had fears/delusions that the deputies were trying to obtain a blood sample from him."

Dr. Malek explained that although she "certainly find[s] [Bustillos's] behavior concerning," it is not uncommon for inmates with mental health issues to "resort[ ] to gassing and smearing feces" when experiencing the "significant distress" of "jails/prison and other locked facilities." She believed "an ACT approach" to community-based treatment would provide "the least restrictive level of care while also ensuring public safety."

### 4. Diversion Hearing

At the January 23, 2020 diversion hearing, the court and counsel discussed both the merits and procedural posture of Bustillos's motion.

On the merits, the prosecutor argued the court should not grant diversion because of Bustillos's extensive criminal record, history of poor performance in custody, lack of response to prior treatment, and history of quickly reoffending upon release. The prosecutor argued the recent gassing incident demonstrated Bustillos's symptoms would not respond to treatment, and that he misled Dr. Malek about the circumstances of the incident because he told her he committed the offense because he was afraid the guard was going to take a blood sample from him, yet preliminary hearing

8

testimony from that morning established that guards sought a blood test only *after* the gassing incident to determine whether Bustillos had any communicable diseases.

Defense counsel countered that Dr. Malek's report and supplemental letter established that Bustillos was eligible and suitable for diversion. Regarding the recent gassing incident, counsel emphasized Dr. Malek's observations about the impact of stressful custodial settings on inmates with mental health issues.

Regarding the procedural posture, defense counsel addressed the court regarding an inquiry from the initial unreported December hearing about the moving party's "burden of proof in a prima facie hearing." Counsel clarified that although he had previously told the court that the preponderance of evidence standard applied, he now believed the "prima face measure of proof is essentially equivalent to what you get at a preliminary hearing; so it is not quite a preponderance but a reasonable or strong suspicion." Counsel argued Dr. Malek's report and letter satisfied this requirement. Counsel urged, "And as the court well knows, this is just a prima facie hearing. We are trying to get past this so we can put on more evidence."

The court expressed concern about whether Bustillos had actually been accepted into a treatment program, and whether, "especially with all of the history of Mr. Bustillos in mental health treatment," he could "successfully be treated." The court told defense counsel he had "put the court in a difficult spot" because he was "asking the court to find eligibility by weighing the background of the defendant, the nature of the current offense, the summary of the defendant's criminal history, the defendant's treatment history, and finding that, with all of that in mind, the treatment that is being

9

contemplated, but not in place, is treatment . . . the defendant can positively successfully respond to."

The court asked defense counsel, "If the court does find there is a prima facie showing of eligibility, what will you present next?" Defense counsel responded,

> "I guess at the next hearing, I would call Dr. Malek so that she could provide additional information. That would be subject to questions the court may have as well as cross-examination by the prosecutor.

> "In addition, I could bring in the social worker. I don't know that she is permitted to testify, so to speak, but I believe she could answer the court's questions informally, . . . and that will probably be it.

> "Maybe I would have Mr. Bustillos directly speak with the court as well at the next level."

The prosecutor responded that he did not anticipate calling any witnesses at a future hearing, but that if Dr. Malek were to testify, he would need discovery materials from the defense to enable an effective cross-examination.

The court stated it would deliver its ruling in one week, after it took "another look at the exhibits and the information that counsel has provided." The court indicated "the most significant points" it would consider were whether Bustillos is able "to comply with treatment as a condition of diversion," and "even with his best intentions and plans, whether he would pose a threat and/or danger of unreasonable risk to the community." The court noted Bustillos has "a long history . . . , and there is also a question of credibility that the Court has to weigh in the information we receive about Mr. Bustillos, from Mr. Bustillos, through the doctor. [¶] There is also the question of . . . how much weight, as the trier of fact, should the Court give to the doctor's opinion."

## 5. Ruling

The court delivered its ruling on January 30, 2020. The court began the hearing by reading aloud the pertinent provisions of section 1001.36. The court noted that while the statute allows the court to conduct an "informal" prima facie hearing that "may proceed on offers of proof," the current proceedings were not informal and "actually" proceeded on "reports," "opinions," and "written information." The court confirmed with counsel that the statute "provides the Court a lot of broad powers, broad choices in determining whether or not it should consider and possibly grant . . . diversion."

The court then summarized its "discussion[s]" with counsel "about the burden of proof"—the prosecutor advocated a preponderance of the evidence (or "greater probability of truth") standard, while Bustillos advocated a preliminary hearing (or "reasonable and probable cause or sufficient cause") standard. The court observed, "So that's the background information that the Court notes, and [the] Court believes counsel agrees, is the backdrop of this proceeding, this motion." The court invited counsel to address the court, and the defense and prosecutor submitted on their prior filings and argument.

The court observed that Bustillos's current robbery offense is a violent felony, during which he pretended to have a gun while attempting to take a car he might then have driven dangerously while under the influence of methamphetamine and marijuana. The court noted Bustillos had given varying accounts to police and Dr. Malek as to why he committed these offenses.

The court then noted Bustillos's extensive criminal history, which included gross vehicular manslaughter, and a history of violence that "is not aberrant or different behavior," but is "violence that continues."

11

The court also observed that Bustillos's conduct while in custody included gassing, even after he switched to injected medication.

Regarding Bustillos's amenability to treatment, the court noted that Bustillos gave Dr. Malek varying explanations for his behavior on different occasions. The court found this pertinent to its role "of gauging how much weight, how much believability the Court can give to" Bustillos. The court found it "should be very cautious about" Bustillos's "credibility."

In this respect, the court noted that Dr. Malek stated in her report that Bustillos's self-reported personality assessment "potentially involve[d] considerable distortion" by virtue of his providing inconsistent responses to similar test items, which led Dr. Malek to "opin[e] that he seemed to present himself in a more negative or pathological manner."

As to whether Bustillos's mental illness, rather than substance abuse, was a substantial factor in his commission of the current offenses, the court noted Bustillos's "long history of both combined," working "hand in hand for the most part."

The court acknowledged Dr. Malek's current diagnosis of Bustillos (schizophrenia) qualifies for diversion, but the court noted he had previously been diagnosed with a nonqualifying mental illness (personality disorder).

Regarding Bustillos's treatment history, the court observed that although Bustillos claimed he had been in prison "all this time" and has "not been treated out in the community," he actually had "been treated out in the community" in group homes, halfway houses, conservatorship, and hospitals. The court expressed concern that the defense's proposed diversion program "lacks all and much of the structure that's been provided before, in the past, and has not resulted in success." The court believed an approach lacking

12

sufficient court supervision would be inconsistent with the Legislature's intent in establishing diversion.

The court then denied Bustillos's motion, making the following findings:

> "The Court finds, based on its careful review of the record, the circumstances of the crime, the prior mental health history, the treatment received in the past, the criminal history of Mr. Bustillos in the past, that the prima facie showing has not been made and . . . cannot find that Mr. Bustillos is eligible for diversion and/or suitable for diversion."

When the court asked defense counsel if he had "[a]nything else on behalf of [his] client," counsel changed the topic to timing and settlement issues.

## B.  Legal Principles

In June 2018, the Legislature enacted section 1001.36, which "authorizes a pretrial diversion program for defendants with qualifying mental disorders.  The statute defines ' "pretrial diversion" ' as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . .' [Citation.]  The stated purpose of the diversion statute 'is to promote all of the following:  [¶]  (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety.  [¶]  (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings.  [¶]  (c) Providing diversion that meets the unique mental health

13

treatment and support needs of individuals with mental disorders.' " (*People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*).)

Subdivision (a) of section 1001.36 gives trial courts discretionary authority to grant pretrial diversion "if the defendant meets all of the requirements specified in" subdivision (b)(1). (§ 1001.36, subd. (a);[3] see *Frahs*, *supra*, 9 Cal.5th at p. 624.) Subdivision (b)(1) sets forth the following six eligibility criteria:

> "(A) The court is satisfied that the defendant suffers from a [qualifying] mental disorder . . . .[4]
>
> "(B) The court is satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense. . . .[5]

---

[3] Section 1001.36, subdivision (a) states: "On an accusatory pleading alleging the commission of a misdemeanor or felony offense, the court *may*, after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant pursuant to this section if the defendant meets all of the requirements specified in paragraph (1) of subdivision (b)." (Italics added.)

[4] Section 1001.36, subdivision (b)(1)(A) states in full: "The court is satisfied that the defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding antisocial personality disorder, borderline personality disorder, and pedophilia. Evidence of the defendant's mental disorder shall be provided by the defense and shall include a recent diagnosis by a qualified mental health expert. In opining that a defendant suffers from a qualifying disorder, the qualified mental health expert may rely on an examination of the defendant, the defendant's medical records, arrest reports, or any other relevant evidence."

[5] Section 1001.36, subdivision (b)(1)(B) states: "The court is satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense. A court may conclude that a defendant's

14

"(C) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment.

"(D) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . .

"(E) The defendant agrees to comply with treatment as a condition of diversion.

"(F) The court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community.  The court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate."

The Legislature amended section 1001.36 a few months after it was enacted "to specify that defendants charged with certain crimes, such as murder and rape, are ineligible for diversion." (*Frahs*, *supra*, 9 Cal.5th at p. 627; see § 1001.36, subd. (b)(2)(A)-(H).)  None of Bustillos's charged offenses are subject to this amendment.

Section 1001.36, subdivision (b)(3) gives trial courts the discretion to require the moving defendant to make a prima facie showing of eligibility:

---

mental disorder was a significant factor in the commission of the charged offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense, the court concludes that the defendant's mental disorder substantially contributed to the defendant's involvement in the commission of the offense."

15

"At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion. The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel. If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate."

"If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. [Citations.] The maximum period of diversion is two years. [Citation.] If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings. [Citation.] 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be deemed never to have occurred.' " (*Frahs, supra*, 9 Cal.5th at p. 627.)

We review a trial court's ultimate decision whether to grant pretrial mental health diversion for an abuse of discretion. (See *People v. Moine* (2021) 62 Cal.App.5th 440, 448 (*Moine*); see also *People v. Oneal* (2021) 64 Cal.App.5th 581, 589 [trial court's determination "whether the defendant's disorder played a significant role in the commission of the charged offense" is

16

"a quintessential fact-finding process" subject to review for substantial evidence].)

"[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) But "[a] court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*Moine*, *supra*, 62 Cal.App.5th at p. 449.)

## C. Analysis

Bustillos primarily argues the trial court abused its discretion by applying the wrong legal standard. He maintains that because the court and parties referred to the diversion hearing as a "prima facie hearing," the court was required to apply a traditional prima facie standard that accepts the moving party's assertions as true. (See, e.g., *In re Figueroa* (2018) 4 Cal.5th 576, 587 ["This court evaluates a [habeas corpus] petition 'by asking whether, *assuming the petition's factual allegations are true*, the petitioner would be entitled to relief'" (italics added)]; *People v. Lewis* (2021) 11 Cal.5th 952 [applying habeas corpus prima facie standard to § 1170.95 hearings].) He thus contends the court erred by weighing evidence and making credibility determinations. On the record before us, we find no abuse of discretion. Regardless of the label the trial court and counsel applied to the diversion hearing, Bustillos received exactly the type of hearing he expected and to which he was entitled—a meaningful hearing at which the court thoroughly evaluated Bustillos's comprehensive evidentiary showing.

Section 1001.36 gives trial courts great leeway in conducting mental health diversion hearings. Subdivision (a) of the statute requires only that

17

the court "consider[ ] the positions of the defense and prosecution."
(§ 1001.36, subd. (a).) Additionally, the court "may"—but need not—"require
the defendant to make a prima facie showing," the hearing for which "*shall*
be informal." (§ 1001.36, subd. (b)(3), italics added.) As the trial court
observed, the hearing it conducted was not informal.

To the contrary, Bustillos filed a formal, noticed motion requesting
diversion, supported by an extensive evidentiary showing. He did not
mention prima facie principles, nor did he request a prima facie hearing.
Similarly, the prosecution responded with an evidentiary showing regarding
Bustillos's extensive criminal history, and requested an evidentiary hearing
only if the court was otherwise inclined to grant Bustillos's motion.

For its part, the court conducted two hearings (one in December and
one in January), and requested additional input from Dr. Malek regarding
Bustillos's recent gassing incident. The court then carefully and thoughtfully
weighed the parties' competing evidentiary showings.

The court observed that certain of Dr. Malek's opinions were based on
Bustillos's self-reporting, about which the court was rightfully dubious. For
example, Dr. Malek acknowledged Bustillos's self-reported personality
assessment "potentially involve[d] considerable distortion," and Bustillos's
explanation to her of the charged gassing incident was contradicted by
preliminary hearing testimony. Of course, "any expert's opinion is only as
good as the truthfulness of the information on which it is based." (*People
v. Ramirez* (2007) 153 Cal.App.4th 1422, 1427.)

The trial court also observed that Bustillos committed the charged
gassing offense after he had been receiving injected medication, which the
defense suggested had improved his condition. This, coupled with his lengthy
history of not responding to treatment and quickly reoffending upon release

18

from a variety of custodial and treatment settings, validated the trial court's concerns that Bustillos would not respond to mental health treatment, and could not be treated in the community without posing an unreasonable risk of danger to public safety.

Moreover, when the trial court asked defense counsel what additional evidence he would present at a further evidentiary hearing, defense counsel made no specific offer of proof. Rather, he merely offered to call Dr. Malek (who had already submitted a 30-page report and a supplement), and to possibly call the defense social worker (who defense counsel acknowledged could not actually testify) and Bustillos. Bustillos did not identify—and still has not identified—what additional information these witnesses would have provided, or explained how it would have led the trial court to reach a different conclusion.

Ultimately, the trial court thoroughly explained its reasoning with an 18-page oral explanation. This is hardly the type of "summar[y] den[ial]" section 1001.36 contemplates for prima facie hearings. (§ 1001.36, subd. (b)(3).)

Bustillos's new *appellate* theory that the trial court applied the wrong legal standard to the hearing ignores the fact that the *trial court* proceeded in precisely the manner *trial counsel* expected—and, indeed, in the manner *they proposed*. When the court asked counsel to address the parties' burdens, defense counsel initially proposed the preponderance standard, and later proposed the preliminary hearing standard. This proposed standard contemplates that the court will weigh evidence and make credibility determinations. (See *People v. Abelino* (2021) 62 Cal.App.5th 563, 573 ["In determining whether there is probable cause [at a preliminary hearing], the magistrate may 'weigh the evidence, resolve conflicts, and give or withhold

19

credence to particular witnesses.' "]; *People v. Massengale* (1968) 261 Cal.App.2d 758, 763 ["[o]n a preliminary hearing the magistrate is required to weigh the evidence and pass on the credibility of witnesses"].)

Before ruling, the trial court reiterated the parties' proposed legal standards and stated the "Court believes counsel agree[ ]." Defense counsel did not interject.

After ruling, the trial court asked defense counsel if he wished to address "[a]nything else on behalf of [his] client." Counsel addressed unrelated topics, and did not take issue with the fact the court had just delivered a ruling based on evaluating evidence and credibility.

Thus, contrary to Bustillos's suggestion on appeal, there was nothing "fundamental[ly] unfair[ ]" about the hearing because it transpired in the manner the parties expected.

Similarly, we are unpersuaded by Bustillos's contention that the fact the trial court weighed evidence and made credibility determinations shows that "the trial court was not impartial." The trial court did exactly what the parties expected it to do, and nothing in the record indicates the court did so in an unfair or biased manner.

Finally, contrary to Bustillos's suggestion, the fact the trial court considered the serious nature of Bustillos's current robbery offense does not indicate the court had "taken issue with" the fact the Legislature did not include robbery among the offenses that categorically disqualify a defendant from diversion. (§ 1001.36, subd. (b)(2).) Rather, although the Legislature identified certain categorically disqualifying current offenses, the Legislature nonetheless contemplated trial courts would consider the circumstances of the current offense when evaluating certain of the eligibility criteria. (See, e.g., § 1001.36, subd. (b)(1)(F) [authorizing trial courts to "consider . . . the

20

current charged offense" when determining whether "the defendant will . . . pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community"], (b)(1)(C) [authorizing trial courts to consider "police reports, preliminary hearing transcripts, [and] witness statements" when determining whether "the defendant's mental disorder was a significant factor in the commission of the charged offense"].)

## III. DISPOSITION

The judgment is affirmed.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


GUERRERO, J.

21